**Application of David L. KLEINMAN et al.**

**Patent Appeal No. 9014.**

United States Court of Customs and Patent Appeals.

Sept. 13, 1973.

**1390**

Frank A. Steldt, St. Paul, Minn., for appellants. Alexander, Sell, Steldt & DeLaHunt, St. Paul, Minn., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred E. McKelvey, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

ALMOND, Senior Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the examiner's rejection under 35 U.S.C. § 103 of claims 27–32 of appellants' application [1] entitled "Adhesive System." We affirm that decision.

The nature of appellants' invention is apparent from a consideration of claim 27, the broadest claim on appeal, set forth below:

27. A composition of matter useful for application to injured mammalian tissue, consisting essentially of a solution of a monomer having the formula

wherein R is alkyl, cyclohexyl, phenyl, 2 (2,2,2-trifluoroethoxy)-ethyl, 1,1,1-trifluoroisopropyl or $CH_2R'$ wherein $R'$ is a radical of the group consisting of phenyl, alkylthioalkylene, alkoxyalkylene, unsubstituted alkyl groups, and halogenated alkyl groups, said radical having from 1 to 7 carbon atoms in anhydrous halogenated propellant at autogenous pressure, the ratio of monomer to propellant being from about 1:15 to 5:1 and the composition optionally containing an inhibitor for polymerization of said monomer, said autogenous pressure being of an order of magnitude of about 45 psi but less than such higher pressure as will cause physical damage to tissues when said composition is sprayed thereon.

The remaining claims on appeal depend from claim 27 and add limitations not pertinent to our resolution of this case.

According to appellants' specification, the composition defined by claim 27 is intended to be contained in an aerosol package from which it is sprayed onto wounded tissue. Moisture present in the treated tissue causes the monomer, an alpha-cyanoacrylate ester, to rapidly polymerize and form a film over the sprayed area. The properties of the film are such that it can be used to stop bleeding and close wounds without the use of sutures.

■ In reaching its decision that the claimed invention would have been obvious within the meaning of § 103, the

1. Serial No. 638,407 filed May 15, 1967.

board relied upon the following references cited by the examiner:

| Jeremias | 2,763,677 | Sept. 18, 1956 |
| Joyner | 2,784,215 | Mar. 5, 1957 |
| Reed | 2,968,628 | Jan. 17, 1961 |
| Briskin | 2,972,545 | Feb. 21, 1961 |
| Von Fieandt et al (Von Fieandt) | 3,269,903 | Aug. 30, 1966 |

In addition to these references, the board also relied upon French Patent 1,174,825 having an effective date as a reference of November 10, 1958. This patent was cited by appellants' attorney at oral hearing before the board.

Jeremias and Joyner disclose that it was known to the art to polymerize alpha-cyanoacrylate esters to form films by merely exposing a thin layer of the monomer to the atmosphere. Reed relates to a propellant composition for aerosol sprays and discloses that halocarbons are used as propellants. Briskin and Von Fieandt describe compositions for treating wounds comprising preformed polymers that can be dispensed from aerosol spray devices.

The French patent relates to the packaging of polymerizable monomers and propellant in aerosol containers. Although none of the monomers disclosed by this reference would encompass alpha-cyanoacrylate esters, a number of monomers are described which undergo polymerization catalyzed by atmospheric moisture when discharged from the container. Representative propellants listed in the text include halogenated materials. The reference also makes it clear that these monomers are stable if an anhydrous condition is maintained within the container and, where necessary, a polymerization inhibitor is included in the aerosol composition.

As additional evidence of the state of the prior art the board also relied upon certain statements in appellants' specification indicating what was known when their invention was made. These statements indicate that it was known to spray a monomeric alpha-cyanoacrylate ester onto injured tissue, albeit using an air gun, and that the monomer would quickly polymerize to form a film useful for stopping bleeding and closing wounds.

In view of the art cited by the examiner and the characterization of the prior art in appellants' specification, we think the board was amply justified in reaching the conclusion that:

\* \* \* it would be obvious to one skilled in this art to employ the aerosol spraying techniques exemplified in the secondary references, Reed, Briskin and Von Fieandt et al. to apply the thin film of monomer for the purposes of the cited art.

\* \* \* \* \* \*

If there were any question as to the obviousness of aerosol dispensing of a monomer it would be resolved by the patent adduced at the hearing by appellants, the French Patent 1,174,825 (November 10, 1958).

Appellants have raised numerous arguments to counter the position of the board. In essence they amount to the assertion that their composition is not obvious since the art does not disclose that alpha-cyanoacrylate esters are soluble in halogenated propellants nor suggest that they be dispensed by aerosol spraying techniques. In view of the fact that halogenated materials are routinely used as propellants, and that the French patent teaches the use of aerosol spraying to dispense reactive monomers, we do not believe that the omissions from the art alluded to by appellants are significant.

Appellants also contend that the prior art teaches away from their invention since it was considered *necessary* to use a spray atomizer to dispense the monomer whereby the propellant, in this case air, was maintained separate from the monomeric alpha-cyanoacrylate ester. On this point we find ourselves in agreement with the solicitor who argues that while the prior art used a spray atomizer there is no indication that it was essential to do so in the art properly before this court.

In further support for their position that the claimed invention would not

have been obvious, appellants point out that monomeric alpha-cyanoacrylate esters and the corresponding polymers were known at the time of the filing of the French patent as shown by the Jeremias patent. In view of this they argue that "Had it been obvious to consider cyanoacrylate monomers as suitable for spraying with aerosol propellants, the French patent disclosure surely would have included it." In their view this conclusion is justified because "The patentees of the French patent are presumed to have known of that patent [Jeremias] and the cyanoacrylate monomers and polymers." As support for this argument they cite Dor-Seal Ltd. v. Commissioner of Patents, 240 F.Supp. 857 (D.D.C.1965).

■ We find no merit in this position. While it is true that the hypothetical person of ordinary skill in the art against whose knowledge the question of obviousness is weighed is *legally* presumed to know all the relevant prior art, In re Boyer, 363 F.2d 455, 53 CCPA 1497 (1966), there is no presumption, rebuttable or not, that the holder of a patent had *constructive* or *actual* knowledge of that same art when he made the invention. Of course it might very well be a significant point in weighing the content of a patent as a reference if it can be demonstrated that an inventor had actual knowledge of relevant art. However, that situation does not confront us in this case.

■ In their brief appellants also discuss certain references not relied upon by the board which they contend support their arguments in regard to the patentability of the appealed claims. Their position relative to these references is that it is their right to have them considered as evidence of the state of the art citing our decision in In re Thompson, 438 F.2d 613, 58 CCPA 966 (1971).

However, as the solicitor points out, these references were made of record by the appellant on the very day the board rendered its decision. Furthermore, appellants did not request reconsideration by the board of its decision based on this art. In view of those circumstances, we do not believe it was incumbent upon the Patent Office to reopen the prosecution of the application now before us and we decline to evaluate the board's decision in light of those references.

For the foregoing reasons we have not been persuaded of error in the board's decision. Accordingly, it is affirmed.

Affirmed.